GEORGE W. CLEMENS and ELVA CLEMENS v. WESTERN UNION TELEGRAPH COMPANY, a corporation of New York.

*(November* 13, 1942.*)*

LAYTON, C. J., and TERRY, J., sitting.

*Thomas Herlihy, Jr.,* and *Morris Cohen* for the plaintiffs.

*William S. Potter* and *Stephen E. Hamilton* (of Southerland, Berl and Potter) for the defendant.

Superior Court for New Castle County, September Term, 1942.

LAYTON, Chief Justice:

The plaintiffs declared in tort to recover damages for the failure of the defendant to transmit and deliver within a reasonable time a telegraph message.

The declaration, reduced to its material facts, alleged: that the defendant maintained a telegraph office in Martinsville, Virginia; that on May 22, 1941, George W. Clemens, one of the plaintiffs, delivered to the defendant's agent at its office in Martinsville the sum of twenty dollars and a mes-

sage to be sent to the plaintiff's wife, Elva Clemens, she being at that time in Wilmington, Delaware; that the defendant accepted for delivery, and promised and agreed, to deliver the message and money to the wife at her then residence in Wilmington; that George W. Clemens paid the defendant the sum of sixty-two cents for the delivery of the money and message; that the message was in the following words and figures: "Best Store Furniture Expect Steady Plant Job Here Come Quickly George W. Clemens Martinsville Vir 20.00".; that the message was intended to instruct the wife to store, and not to sell, the furniture owned by the husband and wife jointly; that the wife at that time expected and awaited instructions from her husband as to the disposition of the furniture; that the husband and wife had agreed to sell the furniture unless the husband notified his wife to the contrary from Martinsville; that prior to May 22, 1941, the wife had telegraphed her husband informing him of an offer which she had received for the furniture, and that she would sell it unless promptly notified to the contrary; that on May 22, 1941, the furniture had not been sold; that it was the duty of the defendant to deliver the message within reasonable time; that the defendant was negligent in that it did not deliver the message until May 24, 1941, after the furniture had been sold, which would not have been done if the message had been delivered within a reasonable time; that the furniture was sold at a price below its true value in order to dispose of it in accordance with the plan agreed upon between the husband and wife; that the plaintiffs suffered damage in the sum of $1000.00, the difference between the sale price and the cost of replacing like furniture.

To the declaration the defendant demurred. Five reasons were assigned. They need not be stated because the parties agree that the question raised by the demurrer, and to be decided by the Court, is whether the declaration discloses a cause of action to recover the special damage alleged.

The defendant insists that the liability of a telegraph company for failure to deliver a message within reasonable time is limited to such damages as arise naturally and probably from the breach of duty itself, or such as may reasonably be supposed to have been within the contemplation of the parties at the time of the agreement, as the probable consequence of the wrong; wherefore, it must appear that the company must have informing notice of special circumstances if it is to be held liable for special damages.

The plaintiffs contend, contra, that in an action as for a tort they are not to be restricted to such damages as were reasonably within the contemplation of the parties, but are entitled to recover all damages which are the natural and probable consequences of the wrong; hence, the contents of the telegram have no bearing on the issue.

The question is whether the rule for the limitation of recoverable damages announced in *Hadley v. Baxendale*, 9 *Exch.* 341, 156 *Eng. Reprint* 145, should be applied in an action of tort. By the rule there stated damages for breach of contract are confined to such as "may fairly and reasonably be considered as arising naturally, that is, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." The rule was accepted and applied by this Court in an action ex contractu. *Hajoca Corporation v. Security Trust Co.*, 2 *Terry* (41 *Del.*) 514, 25 A. 2d 378. In *Wise v. Western Union Tel. Co.*, 7 *W. W. Harr.* (37 *Del.*) 209, 181 A. 302, an action of tort for a wilful wrong, reference was made to the rule but its application was held to be unnecessary or improper. The question can be approached without embarrassment resulting from prior decisions.

A telegraph company is somewhat akin to a common carrier in that they are both carriers. The carrier

transports persons and merchandise, the telegraph intelligence. It is so far a comman carrier as to be bound to serve all people alike, and to exercise due care in the discharge of its public duties. It is bound to act with reasonable despatch independent of the contractual relations which it may assume with those dealing with it.

The case presented is an instance of the right of choice given to a plaintiff to sue ex contractu for breach of contract, or ex delicto for breach of duty. The plaintiffs have elected to sue in tort, and clearly for the reason that it was conceived that the liability was more far reaching.

All torts of negligence may be viewed indifferently either in the light of positive or omissive wrongs. The ordinary separation of the field of legal accountability into contract and tort is, at best, artificial. From one point of view the law of negligence is governed by the law of pure tort; from another viewpoint it is controlled by principles ripened in the field of contract. The fact that the law of negligence in one aspect lies in the region of contract, and in another aspect is the field of pure tort, has brought about a diversity of opinion as regards the extent of liability in the respective fields.

In breach of contract, under the rule of *Hadley v. Baxendale,* the liability is for those results which a reasonable prescient person would anticipate as the likely consequences of his failure to abide by the terms of his contract under the circumstances known at the time it was made. In the field of pure tort the liability is more extensive, and the wrongdoer is generally held to be liable for all the injurious results which flow from the wrongful act by ordinary and natural sequence. But many years ago, it was said by a great English Judge that, while one is expected to anticipate and guard against all reasonable consequences, he is not bound to foresee and provide against that which no reasonable man would expect to happen. *Greenland v. Chaplin,* 5 *Exch.* 248.

And in this State, the Supreme Court has laid it down that negligence in general is tested by the foreseeability of an event which may result in injury. *State,* to *Use of Henderson v. Clark,* 2 *Terry* (41 *Del.*) 246, 20 A. 2d 127, 138 A. L. R. 704. See *South Atlantic Steamship Co. v. Munkacsy,* 7 *W. W. Harr.* (37 *Del.*) 580, 187 A. 600; *Stucker v. American Stores Co.,* 5 *W. W. Harr.* (35 *Del.*) 594, 171 A. 230. Under this milder doctrine liability in negligence is brought in some agreement with liability in contract. In actions sounding in tort brought against telegraph companies for damage resulting from the failure to transmit or deliver messages, or from errors in transmission, there is to begin with a definite contractual relationship. The delictual and contractual conceptions of liability co-exist. If the action is ex contractu, the damages are called special, and are limited under the rule in *Hadley v. Baxendale.* If the action is ex delicto, the damages are necessarily consequential, and the question is with respect to the right to recover such damages. Special damages in the one form of action mean substantially the same thing as consequential damages in the other form of action. 1 *Street, supra,* 444. "There is little trace of a disposition to make the measure of the liability dependent on the form of action." *Kerr Steamship Co. v. Radio Corporation,* 245 N. Y. 284, 157 N. E. 140, 143, 55 A. L. R. 1139. The same limitation of liability ought to apply whether the form of the pleading is on the contract or in tort. See *Kagy v. Western Union Tel. Co.,* 37 *Ind. App.* 73, 76 N. E. 792, 117 *Am. St. Rep.* 278, and note.

A rule of damages of such breadth as to include all the consequences which might be shown to have resulted from the failure or omission to perform a stipulated duty or service would constitute a serious obstruction to and interference with commerce and the common business of life; and the effect often would be to impose a liability wholly out of relation with the nature of the act or service, and the compensation paid and received. The great weight of authority

is against holding a defendant liable for all the actual consequences flowing from an omission of duty, when they are such as no reasonable person, in the light of the attendant circumstances, would have thought likely to occur. A practical and sound rule, based on wise policy, and consistent with good sense and equity, is found in the formula that in cases of torts not amounting to wilful or wanton wrongs, the wrongdoer is liable only for such injurious consequences as, in the surrounding circumstances of the particular case, might have been foreseen or anticipated by him as likely to follow his negligent act. Such consequences are natural and probable. See 17 *C. J.* 751; 25 *C. J. S., Damages,* § 25; 15 *Am. Jur. Tit. Damages,* §66; 1 *Shearman & Redfield, Negligence,* (6th ed.), § 28, 29; *Milwaukee, etc., R. Co. v. Kellogg,* 94 U. S. 469, 24 L. Ed. 256.

Cases involving actions against telegraph companies for damages resulting from breach of duty are multitudinous. In the note to *Kagy v. Western Union Tel. Co.,* 117 *Am. St. Rep.,* supra, it is said, perhaps too broadly, that the American courts, without exception have adopted the rule in *Hadley v. Baxendale* in determining the elements of damages recoverable against telegraph companies, and the rule is now general in this country that the damages must be such as were reasonably in the contemplation of the parties. In 27 *Am. & Eng. Ency. Law* 1059, it is also broadly said: "While actions against telegraph companies are not necessarily or usually ex contractu, but ex delicto for a breach of a public duty, the cause of action is so far dependent upon the original contract of sending as to make the rule just stated (*Hadley v. Baxendale*) controlling, and it has been universally applied in this class of actions without regard to whether the particular action is ex contractu or ex delicto."

Without violence to principle, the contract conception of liability may be regarded as sound in a suit against

a telegraph company for an omissive breach of duty; and the rule in *Hadley v. Baxendale* should be applied.

Whether the defendant company had informing knowledge of the nature of the subject matter of the message either from the language of the message itself or extraneously is, obviously, of the greatest importance if the special damage sought to be recovered is to be brought within its contemplation.

In *Kerr Steamship Co., Inc., v. Radio Corporation, supra,* it was succinctly said that "notice of the business, if it is to lay the basis for special damages, must be sufficiently informing to be notice of the risk." In 3 *Shearman & Redfield, Negligence,* 6th *Ed.,* §754, the authors say: "Although, in the absence of prevailing authority to the contrary, it would seem just to say that a telegram may always be presumed to be of importance, and that the law ought not to sanction negligence on the part of a telegraph company, in proportion as a message may appear to be unimportant; yet it is now settled in a majority of the courts that only the cost of the message can be recovered for the failure to transmit a message promptly and correctly, unless the telegrapher had notice, from the message itself, or from information furnished with it, that its non-delivery would probably be attended with other damages. The principle thus applied is precisely the same as that established as to common carriers of merchandise, that such damages as could not have been anticipated by a prudent business man, as a natural and probable consequence of the breach, are not to be recovered; and, therefore, pecuniary contingencies which depend on the prompt and accurate transmission of the message must, in some way, be brought to the notice of the telegrapher sufficiently to put him on his guard, in order to make them a ground for recovery." Mr. Street (1 *Foundations of Legal Liability,* 450), in summation, says this: "Hence, applying the principle above stated concerning the recovery of spe-

cial damages to the telegraph cases, we find this to be true: that before the plaintiff can recover substantial damages he must in every case show that the telegraph company upon undertaking to transmit the telegram was so far apprised of the nature of the transaction about which the telegram was sent, that it might reasonably be said to foresee and contemplate the damage which is sought to be recovered, as a natural consequence of negligence on its part."

See also 62 C. J. 232; 27 *Am. & Eng. Ency. Law* 1061; 117 *Am. St. Rep.* 289.

We are not unmindful of the truth of the observations of Chief Judge Cardozo in the Kerr Steamship case, *supra*, that an air of unreality is imparted to the doctrine of notice for the reason that the employers of telegraph companies are not expected to give thought to the sense of the messages. But the learned Judge proceeded to say that the doctrine has prevailed for such a length of time as to be tantamount to a rule of property; that telegraph companies have regulated their rates upon the basis of the continuance of the doctrine; and have omitted precautions that might have been thought necessary to adopt if the hazard of the business was to be indefinitely increased.

Some courts take the view that as speedy communication is the boasted merit of the telegraph, and as the method is far more expensive than that by mail, it is to be presumed that the telegraph would not be resorted to at all if time were not of the essence; and that it is not necessary that the company have notice of the circumstances which call for prompt delivery. This view overlooks the fact that in the bustle of this modern age, and, perhaps, due in part to extensive advertisement by the telegraph companies themselves, many persons resort to the telegraph in the most trivial matters and upon occasions not calling for a greater expedition than that furnished by the public post.

We have examined the authorities cited by the plaintiffs. *Postal Telegraph-Cable Co. v. Kaler,* 65 Ga. App. 641, 16 S. E. 2d 77; *Western Union Telegraph Co. v. Guard,* 283 Ky. 187, 139 S. W. 2d 722; and *Mentzer v. Western Union Tel. Co.,* 93 Iowa 752, 62 N. W. 1, 28 L. R. A. 72, 57 Am. St. Rep. 294, are in general support of their position. *Sturtevant v. Western Union Tel. Co.,* 109 Me. 479, 84 A. 998, and *C. M. McMahen & Sons v. Western Union Telegraph & Cable Co.,* 219 Ala. 636, 123 So. 76, 63 A. L. R. 805, are of little assistance. *Barker v. Western Union Tel. Co.,* 134 Wis. 147, 114 N. W. 439, 14 L. R. A. (N. S.) 533, 126 *Am. St. Rep.* 1017, and *Western Union Tel. Co. v. Green,* 153 Tenn. 59, 281 S. W. 778, 48 A. L. R. 301, were decisions based on statutes making telegraph companies liable for all damages occasioned by the negligence of their operators in receiving and delivering messages. In view of the statute the courts were of opinion that necessity of notice or suggestion to the telegraph company of the probability of the damage in fact occasioned was removed as a condition of liability. In *Western Union Tel. Co. v. Biggerstaff,* 177 Ind. 168, 97 N. E. 531, the statute made telegraph companies liable for special damages.

The question of proximate cause and proximate consequence is one usually for the jury, as it is generally a mixed question of law and fact. But where reasonable men will not differ as to the inference to be drawn from undisputed facts, it is the duty of the court to determine the question as a matter of law. *Stucker v. American Stores Corp., supra.*

It is not alleged that the plaintiff sending the telegram gave to the defendant's agent any notice whatsoever of the importance of the message or of the probability of damage resulting from the failure to deliver it promptly; and as the plaintiffs may be supposed to have stated their case as strongly as their proofs would permit, it is to be tak-

en as a fact that the defendant had no notice of probable injurious consequences other than that conveyed by the message itself. Transposing the words of the message, the husband informed his wife that he had in prospect a steady plant job at Martinsville, Virginia, not that he actually had such job; the wife was directed to go to Martinsville quickly; and she was either directed or advised to store the furniture. Taking the words "best store furniture" in their literal meaning, and as they would be taken by the average intelligent person not acquainted with the special circumstances in which they were used, the direction or advice was to store the furniture and nothing else. There was nothing in the message to suggest that a sale of furniture was contemplated in any circumstances. Storage precludes the idea of sale, at least of immediate sale. Many persons, in changing the location of their employment, store their furniture until a new home can be secured and prepared; and it is quite unreasonable to suppose that the defendant was warned by the message that its failure to deliver it promptly would result in a sale of the furniture and at a price far below its value. As a matter of law it must be held that language of the message gave no notice, or even intimation, of probable injurious consequences. *United States Tel. Co. v. Gildersleve*, 29 Md. 232, 96 Am. Dec. 519; *Clark v. Western Union Telegraph Co.*, 224 Mo. App. 1214, 33 S. W. 2d 982; *Western Union Telegraph Co. v. Sullivan*, 82 Ohio 14, 91 N. E. 867, 137 Am. St. Rep. 754; *Western Union Telegraph Co. v. True*, 101 Tex. 236, 106 S. W. 315; *Kerr Steamship Co., Inc., v. Radio Corporation, supra*, are illustrative cases.

The declaration discloses that there was unreasonable delay in the delivery of the telegram. This is admitted by the demurrer. A cause of action is shown for the recovery of the general damage, the expense of sending the telegram. The demurrer is overruled in so far as it is applicable to the

general damages. It is sustained with respect to the special damages alleged.